DAVIS & GAY

v.

CENTRAL VERMONT RAILROAD COMPANY.

GENERAL TERM, 1893.

*Common carrier. Limitation of liability. Bill of lading. Loss by fire. Remote and proximate cause.*

1. Common carriers may, by contract, limit their common law liability in so far as is reasonable.

2. A bill of lading is a contract between the shipper and carrier for the carriage of the goods, to which the assent of the shipper will be presumed from the fact that he receives it.

3. A stipulation in a bill of lading exempting the carrier from liability for loss by fire, which does not happen through the neglect of the carrier, is reasonable.

4. The grain sued for was destroyed by the burning of the elevator in which it was stored. In regular course of shipment from west to east grain was stored in this elevator until ordered forward by the shippers. This grain had been ordered forward some time before the fire, and the county court found that the defendant was negligent in not having sent the grain forward sooner, and that but for this negligence the grain would not have been in the elevator at the time of the fire, but that the fire itself occurred without the fault of the defendant. *Held*, that the defendant was not liable, for that the fire was the proximate and the delay to forward only the remote cause of the damage.

Case for the negligence of the defendant, by which the grain of the plaintiff was destroyed. Plea, the general issue, with notice of special matter. Trial by court at the September term, 1892, Rutland county, TAFT, J., presiding.

Upon the facts found and certified by the court, judgment was given for the plaintiff, to which the defendant excepted.

The plaintiff claimed to recover for the amount of certain grain, which was in transit from Chicago to Rutland, Vt. As evidence of his title to said grain he introduced certain through bills of lading, which contained, among other conditions, the following :

" The said Ogdensburg Transit Company shall not, nor shall any carrier, or any person or party in possession of all or any of said property, be liable for any loss or damage of or to all or any of said property arising from, caused by, or connected with any one or more of the following mentioned causes or things, to wit. :   *   *   *   *   fire while afloat, in transit or in store at any place of shipment, transhipment, station, delivery, or on board of boat or cars,   *   *   *   * unless the same shall affirmatively and without presumption be proven to have been caused by the negligence of the person or party sought to be made liable."

In the ordinary course, grain shipped by this route is taken by water from Chicago to Ogdensburg, N. Y., and is there placed in the elevators of the defendant, where it is stored until the shipper orders it sent forward to its destination.   The grain in question had been placed in the elevator of the defendant for some time before the fire and had all been ordered forward for periods varying from more than thirty days to seven days before its loss.   The elevator and its contents were burned September 9, 1892.   The county court found that the defendant was negligent in not having sent the grain forward sooner, and that if the grain had been sent on with reasonable diligence it would not have been in the elevator at the time of the fire, but that the fire itself occurred without the neglect of the defendant.

*C. A. Prouty* for the defendant.

A common carrier may, by contract, limit his liability for loss occurring without his neglect.   Wood, Railway Law,

p. 1576, s. 425; 2 Redf. Ry., 101; Porter, Bills of Lading, ch. 8; *Farmers' and Mechanics' Bank* v. *Champlain Transportation Co.*, 23 Vt. 186, 205; *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344; *Southern Express Co.* v. *Caldwell*, 21 Wall. 264; *Pemberton Co.* v. *N. Y. Cent. Rd. Co.*, 104 Mass. 144; *Hoadley* v. *Northern Transportation Co.*, 115 Mass. 306.

A bill of lading is a contract between the shipper and the carrier, to which the assent of the shipper, in the absence of proof to the contrary, is conclusively presumed in so far as its terms are reasonable.   Wood, Railway Law, p. 1577, note 2; Porter, Bills of Lading, ss. 150, 151; *Grace* v. *Adams*, 100 Mass. 105; *Hoadley* v. *Transportation Co.*, 115 Mass. 304; *York Mfg Co.* v. *Ill. Cent. Rd. Co.*, 3 Wall. 107; *King* v. *Woodbridge*, 34 Vt. 565.

The neglect to forward this grain was only the remote cause of the loss.   The fire was the approximate cause, and for that the defendant is not responsible.   *Morrison* v. *Davis*, 20 Penn. St. 171; *Denny* v. *New York Cent. Rd. Co.*, 13 Gray 481; *Memphis and Charleston Rd. Co.* v. *Reeves*, 10 Wall. 176; *Hoadley* v. *Northern Transportation Co.*, 115 Mass. 304; *St. Louis, I., M. and S. Rd. Co.* v. *Commercial Union Ins. Co.*, 139 U. S. 223.

*J. C. Baker* and *Geo. E. Lawrence* for the plaintiff.

A common carrier is an insurer of the goods intrusted to him against all casualties save those which arise from the act of God and the public enemy.   3 Wood, Railway Law, 1571 *et seq.* and notes; *Ross* v. *Railroad*, 49 Vt. 364; *Miller* v. *Nav. Co.*, 10 N. Y. 431; *Niblo* v. *Prince*, 44 Barb. 54; *Moore* v. *Railroad*, 3 Mich. 23.

In order to make any contract for exemption from the common law liability in favor of the carrier, binding upon the shipper, his assent to the same must be affirmatively

shown. *Adams Express Co.* v. *Slettaners*, 14 Am. Rep. 57 ; *Buckland* v. *Adams Express Co.*, 97 Mass. 124 ; *Kimball* v. *Railroad*, 26 Vt. 247 ; *Blumenthal* v. *Brainerd*, 38 Vt. 402 ; *Mann* v. *Birchard*, 40 Vt. 326 ; *Boscowitz* v. *Express Co.*, 34 Am. Rep. 191.

The defendant is responsible for its negligence in not having seasonably forwarded this grain. Had it exercised the care of a prudent man in sending it on, the loss would not have occurred. *Michaels* v. *Railroad*, 30 N. Y. 564 ; *Read* v. *Spaulding*, 30 N. Y. 630 ; *Bostwick* v. *Railroad*, 45 N. Y. 712 ; *Condict* v. *Railway Co.*, 54 N. Y. 500 ; *Denson* v. *Railroad*, 3 Lansing 265 ; *Rawson* v. *Holland*, 59 N. Y. 611 ; *Whitworth* v. *Railway*, 87 N. Y. 413 ; *Wolf* v. *Express Co.*, 43 Mo. 421 ; *Read* v. *Railroad*, 60 Mo. 199 ; *Pruitt* v. *Railroad*, 62 Mo. 527 ; *Railroad* v. *Curtis*, 80 Ill. 324 ; *Express Co.* v. *Womack*, 1 Heisk 256.


ROSS, C. J.   The controlling facts found by the county court are :   That the grain for the loss of which recovery is sought, came to the defendant from the Ogdensburg Transportation Co., shipped by wholesale dealers from Chicago, on bills of lading running to the order of the shipper ; that the plaintiffs purchased the bills of lading, usually, after the grain had arrived at Ogdensburg, and had been received by the defendant into its elevator ; that the bills of lading, among other things, provided that the Ogdensburg Transportation Co., and any other common carrier, in the line of transportation, should not be liable for any loss by "fire, while afloat, in transit or in store, at any place of shipment, transhipment, station, delivery, or on board of boat or cars, * * * unless * * caused by the negligence of the person or party sought to be made liable" ; that the grain was destroyed while in the elevator of the defendant at Ogdensburg, by a fire, which occurred without the negligence of the defendant ; but that, if the defendant had acted upon

the orders of the plaintiffs—when their orders were necessary—and removed the grain from its elevator, as soon as the county court has found it should have done, the grain would have been removed before the fire.    On these controlling facts it is apparent:

I.    That, under our decisions, *Farmers' and Mechanics' Bank* v. *Champlain Trans. Co.*, 23 Vt. 186; *same case*, 18 Vt. 131; *Kimball* v. *Rut. & Burl. R. R. Co.*, 26 Vt. 247; *Blumenthal* v. *Brainerd et als.*, 38 Vt. 402; *Mann & Wheeler* v. *Birchard & Page*, 40 Vt. 326; *Hadd* v. *Express Co.*, 52 Vt. 335; *Gillis* v. *Telegraph Co.*, 61 Vt. 461, and, as held generally by courts of last resort, a common carrier may, by contract, limit his common law liability for goods·entrusted to him, so far as in the eye of the law will be considered reasonable; but that it is unreasonable to allow such a servant of the public to contract for relief against his own negligence.    Usage may amount to such limitation, 18 Vt. 131.    Notice, unless brought distinctly to the knowlegdge of the consignor in such a manner that the law will imply his assent to the limitation contained in the notice, will not be considered as entering into and forming a part of the contract.    Bills of lading are contracts, or receipts and contracts.    The carrier thereby acknowledges the receipt of the property to be carried, states the conditions on which he is to carry the property, the person to whom and the place where delivery is to be made, and the rate or compensation for the carriage.    This he delivers to the consignor as evidence of the contract between them.    By receiving the bill of lading the consignor assents to the terms of the consignment contained in it, and becomes bound thereby, so far as the conditions named are reasonable in the eye of the law.    In *Farmers' and Mechanics' Bank* v. *Champlain Transportation Co.*, *supra*, 206, this court said, in speaking of a contract that would limit the common law liability of common carriers: "This express contract ought,

perhaps, to be very clearly proved, and, in water carriage, is usually required to appear in the bill of lading." The entire scope of the decision in *King* v. *Woodbridge*, 34 Vt. 565, proceeds upon the theory that a bill of lading duly delivered and accepted forms a written contract between the consignor and carrier, which cannot be varied by parol evidence. So far as a bill of lading is a receipt it has been allowed sometimes to be explained by parol evidence. *O'Brien* v. *Gilchrist*, 34 Me. 534 (56 Am. Dec., 676 and note). But as a contract of carriage of the goods, so far as it is reasonable, it is held to be a special written contract, not open to explanation by parol evidence. *Steele* v. *Townsend*, 37 Ala. 24 (79 Am. Dec., 49 and note) ; *Baltimore and Ohio R. R.* v. *Rathbone*, 1 W. Va. 87 (88 Am. Dec. 664 and note) ; *McMillan* v. *Mich. Southern and Northern Ind. R. R.*, 16 Mich. 79 (93 Am. Dec., 208 and note) ; *Chandler* v. *Sprague*, 5 Met. 306 (38 Am. Dec. 404 and note) ; *Grace* v. *Adams*, 100 Mass. 505 (97 Am. Dec., 117 and note) ; *McFadden* v. *Mo. Pa. R. R. Co.*, 92 Mo. 343 (1 Am. St. R.. 721 and note) ; *Graves* v. *Lake Shore and Mich. Southern R. R. Co.*, 137 Mass. 33 (50 Am. Rep., 282).

Where the bill of lading is received by the consignor without objection, and nothing is shown to the contrary, the law presumes he accepts it and becomes bound by its terms, as the contract for the carriage of the goods receipted for, and if limitations are imposed upon the common law liability of the carrier, that he consents to them and is bound by them, so far as they are, in the eye of the law, reasonable. Nothing is found why the consignors named in the bills of lading, receipting for the grain lost, did not consent to the conditions set forth in them. The plaintiffs came into the rights of the consignors by an assignment of the bills of lading. Thereby they became the consignees of the grain. As such they took the rights of the consignors, to whose

order the goods were consigned.   Thereby they obtained
no greater rights than the consignors had, under the bills of
lading.   The counsel for the plaintiffs criticise the condi-
tions contained in the bills of lading.   Whatever may be
justly said in regard to others of them, this case brings for
consideration only the one  already quoted in regard to loss
by fire.   That exempts the carrier from liability only for
such fires as occur without the carrier's negligence.   Leav-
ing the carrier responsible for  losses which came from fires
caused by the carrier's negligence, the limitation was rea-
sonable under the decisions already cited.   It is clearly ex-
pressed and capable of ready comprehension.   It is no ex-
cuse if the plaintiffs did not read and consider it.   Courts
are established neither to make contracts for the parties, nor
to relieve them from such contracts as they negligently and
carelessly enter into.   They are to construe and give effect
to contracts, as made, so far as they are lawful.   This elim-
inates the liability of the defendant for the loss so far as it
was occasioned by the fire, for that has been found to have
occurred without the negligence of the defendant.

II.   But it is contended that the delay or negligence of
the defendant in not removing the grain as speedily as the
county court has found that it ought to have done renders the
defendant liable.   It is evident that the fire was the immedi-
ate, proximate cause of the destruction and loss of the grain.
If the fire had not occurred, or if that cause is eliminated,
the grain would not have been lost.   The *causa causans*
was the fire.   The concomitant incident was the delay by
the defendant in removing it from the elevator.   But that
delay would not have destroyed the grain and caused its
loss if the fire had not intervened.   It is generally held that
a common carrier is liable on the ground of negligence only
when that negligence is the proximate cause of the loss.   On
this subject, and on what is the proximate and what the re-
mote cause, these authorities are helpful. *Bohen* v. *City of*

*Waseca*, 32 Minn. 176 (50 Am. R., 564 and note) ; *West*
v. *Ward*, 77 Ia. 323 (14 Am. St. R., 284 and note) ; *White*
v. *Conley*, 14 Lea 51 (52 Am. R., 154 and note) ; *Haverly* v.
*State Line and S. R. R. Co.*, 135 Pa. 50 (20 Am. St. R.,
848 and note) ; *Perley* v. *Eastern R. R. Co.*, 98 Mass. 414
(96 Am. Dec., 645 and note).

But courts differ in holding the carrier liable, when his
delay is the remote cause of the loss, and a proximate cause
exists therefor, for which he is not liable.   Courts of last
resort holding the carrier liable in such cases, are those of
New York, followed by those of Missouri and Illinois.
Holding that the carrier is not liable for such remote cause
are the courts of United States, Massachusetts, Pennsyl-
vania, Ohio, Michigan, West Virginia and Iowa.    The
cases of these states, *pro* and *con*, can be found collected in
a note to *Norris* v. *Savannah, etc., Ry. Co.*, 23 Fla. 182
(11 Am. St. R., 355).   To the last named class, apparent-
ly, should be added, the courts of Nebraska and of Maine.
*McLary* v. *Sioux City and Pa. R. R. Co.*, 3 Neb. 44 (19
Am. R., 631) ; *O'Brien* v. *McGlinchy*, 68 Me. 557.

In some of the cases cited holding the carrier liable an-
other element existed in addition to the delay of the carrier
in moving the goods to their destination, to wit. : the expos-
ure of the property to the action of the elements which was
observable to the carrier, like freezing, or the want of food
and care when the property consisted of live animals.
When the property is of a kind liable to injury or destruc-
tion by such exposure, whether moving the property with
due despatch or delaying so to move it, the carrier is under
a duty to use common prudence to protect the property
from dangers which are known to him to exist, and which
have come expectedly or unexpectedly, and if the danger
came without his fault he may charge for the extra care.
*Beckwith* v. *Frisbe*, 32 Vt. 559.

Some of the cases holding the carrier for delay might

have been properly decided against him, because, knowing the danger to which the property was exposed, he did not exercise the diligence and care of a prudent bailee to protect it. In the case at bar, if the defendant could have protected the property from the fire, after it knew the fire existed, by the exercise of reasonable prudence and diligence, and did not, the defendant would have been liable from its failure to use this measure of prudence and diligence, but not on the ground of its delay to move the grain earlier. I am not aware that any case exists where this court has held a party liable for the remote cause of an injury of this nature. The question has not often come before it.

In *Templeton* v. *Montpelier*, 56 Vt. 328, the proximate cause of the plaintiff's injury was the failure of the town to erect a proper guard rail on the side of its highway ; the remote cause, the fright of the plaintiff's horse, at that point, by a train of cars on the railroad running near the highway. The plaintiff knew that, by going that road, he was liable to encounter a train of cars, and that there was another highway to his place of destination, equally feasible, which would not bring him near a moving train of cars. The referee found that the plaintiff was negligent in using the highway on which he was injured. This court held that the plaintiff's negligence was only remotely connected with his injury, and that it did not contribute to its proximate cause, and for that reason did not defeat his right of recovery.

This conclusion, in principle, is the same as that reached by the courts which hold that the carrier is not liable where his only fault is that of delay to move the consigned goods with such rapidity as the trier might consider reasonable. We think it is the better conclusion that, in such cases, if the proximate cause of the loss arises in such a manner that it will not support an action, neither will the remote cause, though incidental to the proximate cause. If the proximate

cause occurs without the fault of the carrier, in other words, as to him is accidental, he cannot forecast when or where it may fall upon the goods entrusted to him to carry, or whether it will fall upon them at all. It is as likely to fall upon them when being moved with despatch as when delay occurs. Being unconnected with it he cannot forefend the property entrusted to him against it by the exercise of the utmost prudence and diligence. If he could forecast when and where it would occur, at times, it might be his duty to delay the movement of the property. In that way only could he protect the goods. But inasmuch as he cannot forecast that it will occur, nor when nor where it will occur, and is himself in no respect responsible for its occurrence, he is under no duty to the consignor or owner of the goods in regard to its occurrence.

*Judgment reversed and judgment for the defendant to recover its costs.*